UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ADAM J. BURKE,<br>ABDIRAHIN K. IBRAHIM,<br>DANA E. KIDD, and<br>SAMATAR H. OMAR,<br><br>Defendants. | CR 16-338 MJD/FLN<br><br>**INDICTMENT**<br><br>18 U.S.C. § 1349 |

THE UNITED STATES GRAND JURY CHARGES:

## INTRODUCTION

1. From at least in or about 2012 through in or about December 2015, Defendant **ADAM J. BURKE**, a Doctor of Chiropractic, participated in a scheme with others to defraud automobile insurance companies by submitting claims and receiving reimbursements through his chiropractic clinic for chiropractic services that either were not medically necessary or were not rendered. The services prescribed and purportedly provided by **BURKE** were not determined by medical necessity or the physical condition of each patient and were, instead, designed to fraudulently maximize reimbursement from the patients' automobile insurance companies. To induce patients to show up to chiropractic appointments for medically unnecessary services, **BURKE** made illegal

SCANNED
DEC 20 2016
U.S. DISTRICT COURT MPLS

payments to patient recruiters, known as "runners," typically paying each runner $1,000 to $2,000 per automobile accident patient, to bring those patients to his clinic for services, often withholding those payments until the patients had attended a minimum threshold number of treatment sessions. The runners, in turn, induced patients into attending these unnecessary treatment sessions by paying illegal kickbacks to the patients. **BURKE** then billed automobile insurance companies for these fraudulent claims.

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

### Relevant Entities and Individuals

2. Burke Chiropractic Center, P.A. ("Burke Chiropractic"), was a chiropractic clinic located in Edina, Minnesota.

3. Defendant **ADAM J. BURKE**, a resident of Minneapolis, Minnesota, was a Doctor of Chiropractic, registered with State of Minnesota, and was the chief executive officer of Burke Chiropractic. **BURKE** submitted and caused to be submitted to automobile insurance companies claims for chiropractic and rehabilitation services that were not medically necessary and were not provided and made and caused to be made illegal payments for the referral of patients to Burke Chiropractic.

4. Defendant **ABDIRAHIN K. IBRAHIM**, a resident of St. Paul, Minnesota, was a runner employed by **ADAM J. BURKE** and Burke Chiropractic. **IBRAHIM** recruited automobile accident victims to show up for appointments at Burke Chiropractic, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

5. Defendant **DANA E. KIDD**, a resident of Elk River, Minnesota, was a runner employed by **ADAM J. BURKE** and Burke Chiropractic. **KIDD** recruited automobile accident victims to show up for appointments at Burke Chiropractic, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

6. Defendant **SAMATAR H. OMAR**, a resident of Edina, Minnesota, was a runner employed by **ADAM J. BURKE** and Burke Chiropractic. **OMAR** recruited automobile accident victims to show up for appointments at Burke Chiropractic, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

## Minnesota's "No-Fault" Automobile Insurance

7. The Minnesota No-Fault Automobile Insurance Act (the "No-Fault Act"), mandated that every vehicle registered in the State of Minnesota be covered by "no-fault" automobile insurance. The No-Fault Act also required that automobile insurance carriers (each being an "Insurer," or collectively the "Insurers") issue policies that comply with various requirements, including providing minimum coverage of $20,000 in medical expense benefits and $20,000 in income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss benefits, to victims of automobile accidents. The No-Fault Act required that Insurers provide this coverage and pay these benefits regardless of which party is at fault for the automobile accident. Among the medical expense benefits that an Insurer was required to reimburse were chiropractic services.

8. Insurers providing coverage under the No-Fault Act constituted a "health care benefit program," as defined by Title 18 United States Code, Section 24(b).

9. The No-Fault Act prohibited health care providers, including chiropractors, from initiating direct contact with any individual who suffered an injury as a result of an automobile accident, specifying that the prohibited direct contact included contact by any employee, agent, or third party acting on behalf of the health care provider, including individuals referred to as "cappers," "runners," or "steerers." Minnesota laws also expressly prohibited the employment of runners, cappers, or steerers (hereinafter, "runner" or "runners"), defining each such term to mean "a person who for a pecuniary gain directly procures or solicits prospective patients through telephonic, electronic, or written communication, or in-person contact, at the direction of, or in cooperation with, a health care provider when the person knows or has reason to know that the provider's purpose is to perform or obtain services or benefits under or relating to a contact of motor vehicle insurance." Mn. Stat. § 609.612 Subd. 1(c). Any claims for services rendered by a health care provider that resulted from the use of a runner "are noncompensable and unenforceable as a matter of law." *Id.* Subd. 2.

### The No-Fault Insurance Fraud Scheme

10. In order to take advantage of the provisions of the No-Fault Act that required reimbursement of chiropractic services, **ADAM J. BURKE** focused Burke Chiropractic's business on automobile accident victims and structured it in a way that would maximize both the number of automobile accident patients seen at the clinic and the number of visits and treatments each patient would receive.

4

11. To increase the patient volume at Burke Chiropractic, in violation of Minnesota State Law, **ADAM J. BURKE** paid and caused to be paid illegal kickbacks to runners, including to **ABDIRAHIN K. IBRAHIM, DANA E. KIDD,** and **SAMATAR H. OMAR,** in exchange for the referral of automobile accident victims to Burke Chiropractic. **ADAM J. BURKE** generally paid the runners, including **ABDIRAHIN K. IBRAHIM, DANA E. KIDD,** and **SAMATAR H. OMAR,** a kickback of between $1,000 and $2,000 per patient referral.

12. To ensure that he and Burke Chiropractic would maximize profits when billing the services to the Insurers, **ADAM J. BURKE** withheld kickback payments until after the referred patient had completed a minimum threshold number of chiropractic appointments at Burke Chiropractic, thus ensuring that **ABDIRAHIN K. IBRAHIM, DANA E. KIDD, SAMATAR H. OMAR** and other runners would require the automobile accident patients that they referred to return for multiple visits.

13. To induce patients to go to Burke Chiropractic for services and to continue attending medically unnecessary sessions at Burke Chiropractic, **ABDIRAHIN K. IBRAHIM, DANA E. KIDD, SAMATAR H. OMAR** and other runners paid cash kickbacks directly to the patients. In some instances, the runners would pay individuals to stage accidents and then go to Burke Chiropractic for treatments, which were subsequently billed to the automobile insurance companies.

14. To conceal the true nature of the illegal payments and avoid paying the kickbacks to the runners in their personal capacities, **ADAM J. BURKE** encouraged the runners to form corporate entities, typically in the form of limited liability companies

("LLCs"), with names that sounded like legitimate businesses that performed marketing or transportation services. **BURKE** then made the illegal kickback payments to these LLCs.

15. Regardless of the physical condition of each patient, **ADAM J. BURKE** prescribed a similar, and often identical, protocol of treatment for each patient, seeking to maximize the number of visits that each patient would make to Burke Chiropractic, to exhaust the available No-Fault benefits for each patient and to maximize reimbursement for **BURKE** and Burke Chiropractic. **BURKE** prescribed and performed these services for automobile accident patients without consideration of the medical necessity of these treatments.

16. **ADAM J. BURKE** then submitted and caused to be submitted to the Insurers claims for these services that were not medically necessary and, in other instances, were not provided. With each such claim submission to the various Insurers, **BURKE** and Burke Chiropractic represented that the services for which reimbursement was being sought were provided and were medically necessary.

17. **ADAM J. BURKE** also submitted and caused to be submitted to the Insurers claims for services that were provided as a result of kickback payments to **ABDIRAHIN K. IBRAHIM, DANA E. KIDD, SAMATAR H. OMAR** and other runners and failed to disclose this material fact to the Insurers.

18. The Insurers paid over a million dollars to **ADAM J. BURKE** and Burke Chiropractic as a result of these false and fraudulent claims submissions.

## COUNT 1
(Conspiracy to Commit Health Care Fraud)

19. The allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged as if fully set forth herein.

20. From at least in or about 2012 and continuing through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**ADAM J. BURKE,
ABDIRAHIM K. IBRAHIM,
DANA E. KIDD, and
SAMATAR H. OMAR,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Sections 1349.

## COUNT 2
(Conspiracy to Commit Mail Fraud)

21. The allegations set forth in paragraphs 1 through 18 of this Indictment are re-alleged as if fully set forth herein.

22. From at least in or about 2012 and continuing through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**ADAM J. BURKE,
ABDIRAHIM K. IBRAHIM,
DANA E. KIDD, and
SAMATAR H. OMAR,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

23. Counts 1 and 2 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

24. Upon conviction of the offenses alleged in Counts 1-2 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1 and 2, respectively.

25. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                FOREPERSON