UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-338 (MJD/FLN)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **FIRST SUPERSEDING** |
| v. | ) **INDICTMENT** |
| | ) |
| ADAM JOHN BURKE, | ) 18 U.S.C. § 2 |
| ABDIRAHIN KHALIF IBRAHIM, and | ) 18 U.S.C. § 1341 |
| DANA ENOCH KIDD, | ) 18 U.S.C. § 1349 |
| | ) |
| Defendants. | ) |

THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTION

1. From at least in or about 2012 through in or about December 2015, Defendant **ADAM JOHN BURKE**, a Doctor of Chiropractic, participated in a scheme with others to defraud automobile insurance companies by submitting claims and receiving reimbursements through his chiropractic clinic for chiropractic services that either were not medically necessary or were not rendered. The services prescribed and purportedly provided by **BURKE** were not determined by medical necessity or the physical condition of each patient and were, instead, designed to fraudulently maximize reimbursement from the patients' automobile insurance companies. To induce patients to show up to chiropractic appointments for medically unnecessary services, **BURKE** made illegal payments to patient recruiters, known as "runners," typically paying each runner $1,000 to $2,000 per automobile accident patient, to bring those patients to his clinic for services, often withholding those payments until the patients had attended a minimum threshold



SCANNED
AUG 1 5 2017
U.S. DISTRICT COURT MPLS

number of treatment sessions. The runners, in turn, induced patients into attending these unnecessary treatment sessions by paying illegal kickbacks to the patients. **BURKE** then billed automobile insurance companies for these fraudulent claims.

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

### Relevant Entities and Individuals

2.  Burke Chiropractic Center, P.A. ("Burke Chiropractic"), was a chiropractic clinic located in Edina, Minnesota.

3.  Defendant **ADAM JOHN BURKE**, a resident of Minneapolis, Minnesota, was a Doctor of Chiropractic, registered with the State of Minnesota, and was the chief executive officer of Burke Chiropractic. **BURKE** submitted and caused to be submitted to automobile insurance companies claims for chiropractic and rehabilitation services that were not medically necessary and were not provided and made and caused to be made illegal payments for the referral of patients to Burke Chiropractic.

4.  Defendant **ABDIRAHIN KHALIF IBRAHIM**, a resident of St. Paul, Minnesota, was a runner employed by **ADAM JOHN BURKE** and Burke Chiropractic. **IBRAHIM** recruited automobile accident victims to show up for appointments at Burke Chiropractic, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

5.  Defendant **DANA ENOCH KIDD**, a resident of Elk River, Minnesota, was a runner employed by **ADAM JOHN BURKE** and Burke Chiropractic. **KIDD** recruited

automobile accident victims to show up for appointments at Burke Chiropractic, received illegal payments for recruiting these patients, and made illegal payments to patients to induce them to continue receiving medically unnecessary chiropractic services.

### Minnesota's "No-Fault" Automobile Insurance

6. The Minnesota No-Fault Automobile Insurance Act (the "No-Fault Act"), mandated that every vehicle registered in the State of Minnesota be covered by "no-fault" automobile insurance. The No-Fault Act also required that automobile insurance carriers (each being an "Insurer," or collectively the "Insurers") issue policies that comply with various requirements, including providing minimum coverage of $20,000 in medical expense benefits and $20,000 in income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss benefits, to victims of automobile accidents. The No-Fault Act required that Insurers provide this coverage and pay these benefits regardless of which party is at fault for the automobile accident. Among the medical expense benefits that an Insurer was required to reimburse were chiropractic services.

7. The No-Fault Act prohibited health care providers, including chiropractors, from initiating direct contact with any individual who suffered an injury as a result of an automobile accident, specifying that the prohibited direct contact included contact by any employee, agent, or third party acting on behalf of the health care provider, including individuals referred to as "cappers," "runners," or "steerers." Minnesota laws also expressly prohibited the employment of runners, cappers, or steerers (hereinafter, "runner" or "runners"), defining each such term to mean "a person who for a pecuniary gain directly

procures or solicits prospective patients through telephonic, electronic, or written communication, or in-person contact, at the direction of, or in cooperation with, a health care provider when the person knows or has reason to know that the provider's purpose is to perform or obtain services or benefits under or relating to a contact of motor vehicle insurance." Mn. Stat. § 609.612 Subd. 1(c). Any claims for services rendered by a health care provider that resulted from the use of a runner "are noncompensable and unenforceable as a matter of law." *Id.* Subd. 2.

### The No-Fault Insurance Fraud Scheme

8.  In order to take advantage of the provisions of the No-Fault Act that required reimbursement of chiropractic services, **ADAM JOHN BURKE** focused Burke Chiropractic's business on automobile accident victims and structured it in a way that would maximize both the number of automobile accident patients seen at the clinic and the number of visits and treatments each patient would receive.

9.  To increase the patient volume at Burke Chiropractic, in violation of Minnesota State Law, **ADAM JOHN BURKE** paid and caused to be paid illegal kickbacks to runners, including to **ABDIRAHIN KHALIF IBRAHIM** and **DANA ENOCH KIDD**, in exchange for the referral of automobile accident victims to Burke Chiropractic. **ADAM JOHN BURKE** generally paid the runners, including **ABDIRAHIN KHALIF IBRAHIM** and **DANA ENOCH KIDD**, a kickback of between $1,000 and $2,000 per patient referral.

10. To ensure that he and Burke Chiropractic would maximize profits when billing the services to the Insurers, **ADAM JOHN BURKE** withheld kickback payments

4

until after the referred patient had completed a minimum threshold number of chiropractic appointments at Burke Chiropractic, thus ensuring that **ABDIRAHIN KHALIF IBRAHIM, DANA ENOCH KIDD**, and other runners would require the automobile accident patients that they referred to return for multiple visits.

11.  To induce patients to go to Burke Chiropractic for services and to continue attending medically unnecessary sessions at Burke Chiropractic, **ABDIRAHIN KHALIF IBRAHIM, DANA ENOCH KIDD**, and other runners paid cash kickbacks directly to the patients. In some instances, the runners would pay individuals to stage accidents and then go to Burke Chiropractic for treatments, which were subsequently billed to the automobile insurance companies.

12.  To conceal the true nature of the illegal payments and avoid paying the kickbacks to the runners in their personal capacities, **ADAM JOHN BURKE** encouraged the runners to form corporate entities, typically in the form of limited liability companies ("LLCs"), with names that sounded like legitimate businesses that performed marketing or transportation services. **BURKE** then made the illegal kickback payments to these LLCs.

13.  Regardless of the physical condition of each patient, **ADAM JOHN BURKE** prescribed a similar, and often identical, protocol of treatment for each patient, seeking to maximize the number of visits that each patient would make to Burke Chiropractic, to exhaust the available No-Fault benefits for each patient and to maximize reimbursement for **BURKE** and Burke Chiropractic. **BURKE** prescribed and performed these services for automobile accident patients without consideration of the medical necessity of these treatments.

14. **ADAM JOHN BURKE** then submitted and caused to be submitted to the Insurers claims for these services that were not medically necessary and, in other instances, were not provided. With each such claim submission to the various Insurers, **BURKE** and Burke Chiropractic represented that the services for which reimbursement was being sought were provided and were medically necessary.

15. **ADAM JOHN BURKE** also submitted and caused to be submitted to the Insurers claims for services that were provided as a result of kickback payments to **ABDIRAHIN KHALIF IBRAHIM, DANA ENOCH KIDD**, and other runners and failed to disclose this material fact to the Insurers.

16. The Insurers paid millions of dollars to **ADAM JOHN BURKE** and Burke Chiropractic as a result of these false and fraudulent claims submissions.

## COUNT 1
(Conspiracy to Commit Mail Fraud)

17. The allegations set forth in paragraphs 1 through 16 of this Indictment are re-alleged as if fully set forth herein.

18. From at least in or about 2012 and continuing through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants,

**ADAM JOHN BURKE,
ABDIRAHIN KHALIF IBRAHIM, and
DANA ENOCH KIDD,**

did knowingly and willfully conspire, combine, and agree with each other and with other persons known and unknown to the Grand Jury to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

CASE 0:16-cr-00338-MJD-FLN   Document 139   Filed 08/15/17   Page 7 of 9

U.S. v. Adam John Burke, et al.                                   Criminal No. 16-338 (MJD/FLN)

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-13
(Mail Fraud)

19.  The allegations set forth in paragraphs 1 through 16 of this Indictment are re-alleged as if fully set forth herein.

20.  From at least in or about 2012 and continuing through in or about December 2015, in the State and District of Minnesota and elsewhere, the defendants, and others known and unknown to the grand jury, having devised and intending to devise the scheme and artifice described above, caused to be sent, delivered, and moved by the United States Postal Service and private and commercial interstate carrier various mailings, items, and things for the purpose of executing and attempting to execute such scheme and artifice:

| COUNT | APPROX. DATE | DEFENDANTS | MAILING DETAILS |
|---|---|---|---|
| 2 | 1/30/2014 | **ADAM JOHN BURKE** | Mailing of claims for patient M.B. to Travelers Ins. Co |
| 3 | 2/4/2014 | **ADAM JOHN BURKE** | Mailing of check for services for patient M.B. from Travelers to Burke Chiro. |
| 4 | 2/17/2014 | **ADAM JOHN BURKE** | Mailing of claims for patient D.B. to State Farm |
| 5 | 2/20/2014 | **ADAM JOHN BURKE** | Mailing of check for services for patient D.B. from State Farm to Burke Chiro. |
| 6 | 3/21/2014 | **ADAM JOHN BURKE** | Mailing of claims for patient B.O. to State Farm |
| 7 | 3/25/2014 | **ADAM JOHN BURKE** | Mailing of check for services for patient B.O. from State Farm to Burke Chiro. |
| 8 | 2/17/2015 | **ADAM JOHN BURKE, ABDIRAHIN KHALIF IBRAHIM** | Mailing of demand letter from attorney B.R. including claims for services performed at Burke Chiro. on patient Y.A. |

| COUNT | APPROX. DATE | DEFENDANTS | MAILING DETAILS |
|---|---|---|---|
| 9 | 9/16/2015 | **ADAM JOHN BURKE, ABDIRAHIN KHALIF IBRAHIM** | Mailing of check for full and final settlement, including claims for services by Burke Chiro., for patient Y.A. from Repwest Ins. Co. to attorney for Y.A. |
| 10 | 10/5/2015 | **ADAM JOHN BURKE, ABDIRAHIN KHALIF IBRAHIM** | Mailing of claims for patient N.A. to GEICO |
| 11 | 9/9/2013 | **ADAM JOHN BURKE, DANA ENOCH KIDD** | Mailing of claims for patient A.W. to GEICO |
| 12 | 9/23/2013 | **ADAM JOHN BURKE, DANA ENOCH KIDD** | Mailing of check for services for patient A.W. from GEICO to Burke Chiro. |
| 13 | 11/14/2012 | **ADAM JOHN BURKE, DANA ENOCH KIDD** | Mailing of claim for services for patient A.J. to Western National Ins. Co. |

All in violation of Title 18, United States Code, Section 1341 and 2.

### FORFEITURE ALLEGATIONS

21.   Counts 1-13 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

22.   Upon conviction of the offenses alleged in Counts 1-13 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7) and Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), all property, real or personal, that

U.S. v. Adam John Burke, *et al.*                              Criminal No. 16-338 (MJD/FLN)

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 1-13, respectively.

23. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____           _____
ACTING UNITED STATES ATTORNEY        FOREPERSON